## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STEVEN A. ROMERO,

    Plaintiff,

v.                                                                                       No. 10-cv-00591-RB-LAM

JEREMY STOREY et al.,

    Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment filed by Defendants City of Las Cruces, Manuel Frias, Vincent Shadd, and Jeremy Story[1] ("Defendants") on November 15, 2010 (Doc. 40) and Defendants' Memorandum in Support (Doc. 41). Defendant police officers contend that they are entitled to qualified immunity on the federal constitutional claims raised in the complaint, because the defendant police officers did not violate any clearly established constitutional rights on the part of Plaintiff Steven A. Romero. Defendants further contend that if the individual police officers are entitled to summary judgment, then the City of Las Cruces must be granted summary judgment as well. Plaintiff opposes the motion. Having considered the submissions and arguments of counsel and the relevant law, and being otherwise fully advised, I find that the motion is not well taken and shall be denied.

**I.   Background**

Plaintiff brings this lawsuit alleging unlawful arrest and use of excessive force. Plaintiff is suing Defendants Jeremy Story, Manuel Frias, and Vincent Shadd individually and in their official capacities as law enforcement officers for the Las Cruces Police Department. Plaintiff is also suing

---

[1] Although Officer Story's name is spelled "Storey" in the caption of the case, the correct spelling is "Story."

the City of Las Cruces. The complaint brings causes of action for unreasonable search and seizure (Count I); excessive force (Count II); municipal liability (Count III); false arrest under state law (Count IV); false imprisonment under state law (Count V); battery under state law (Count VI); and intentional infliction of emotional distress under state law (Count VII). The Court has dismissed the § 1983 official capacity claims against the individual Defendants and the intentional infliction of emotional distress claim under state law (Doc. 24). Defendants now move for summary judgment on Counts I though III of the complaint.

The facts material to this case are as follows. On December 13, 2009, a citizen complainant, Aaron Diaz, contacted the Las Cruces Police Department to report an alleged vandalism to his vehicle in the parking lot of an apartment complex. Although it is not clear which of these facts were reported to the police, Mr. Diaz apparently had heard a loud noise, and went outside to investigate. He then noticed that his car had been vandalized, and at the same time, observed an unknown Hispanic male in the parking lot. Later that day, Mr. Diaz called the police again, and Las Cruces Police Officers Jeremy Story, Vincent Shadd, and Manuel Frias arrived at the scene in response. The content of this second phone call and the communications made to the officers on the scene are disputed.

According to Officer Story, when he arrived on the scene, the citizen complainant stated that the person who had vandalized his vehicle had gone inside Apartment No. 17. Defs.' Ex. A, Story Dep. at 6:20-7:2 (Doc. 41-1). However, Mr. Diaz now claims that he did not tell the police that he had actually witnessed the vandalism. Pl.'s Ex. A, Diaz Aff. ¶ 10 (Doc. 43-1). Rather, Mr. Diaz indicates that in his first call to the police, he communicated the fact that an unknown Hispanic male was present in the parking lot at the time Mr. Diaz noticed his car had been vandalized. *Id.* ¶ 9. Mr. Diaz claims he then reported, in his second phone call, that the same

2

unknown Hispanic male had entered Apartment No. 17. *Id.* ¶¶ 13, 15.

The parties generally agree on the remaining material facts. After speaking to Mr. Diaz, the officers approached Apartment No. 17 and knocked on the door. Officer Story took a position to one side of the door, and Officer Shadd stood on the other side, while Officer Frias stayed by Plaintiff's van. Plaintiff answered the door and took a step or two outside of the apartment. The officers told Plaintiff to remove his hands from his pockets, and he complied. Plaintiff did not know why the officers were there, so he turned around and took a step or two back into the apartment, telling his girlfriend inside the apartment that he did not want anything to do with what was going on.[2] Officer Story grabbed Plaintiff from behind to prevent him from entering the apartment, while Officer Frias performed a leg sweep that caused Plaintiff to fall to the ground. Plaintiff suffered a cut lip and a chipped tooth, but refused medical treatment on the scene. The officers placed Plaintiff in handcuffs and arrested him.

## II.     Legal Standard

Police officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This is an objective standard and requires no inquiry into the officers' state of mind. *Id.* To defeat the defense of qualified immunity, a plaintiff must prove "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's

---

[2] Plaintiff's affidavit states that he was dragged outside by the officers before he could say anything to his girlfriend. Pl.'s Ex. C, Romero Aff. ¶ 11. However, Plaintiff does not rely on this fact in his response in opposition to summary judgment. *See* Doc. 43 at 6 ("Mr. Romero said something to the effect of he did not want anything to do with what was going on and stepped back inside [the] apartment . . . ."). This is, therefore, not a factual dispute that the Court must resolve.

conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (internal quotation marks omitted). If a plaintiff meets this burden, then a third inquiry is presented: whether the defendant has satisfied the usual summary judgment standard of showing that no material facts are in dispute and that he or she is entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252. Analysis of a summary judgment motion requires that the court consider all the evidence in the light most favorable to the nonmoving party. *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

**III. Discussion**

    **A. Unlawful Seizure**

Defendants move for summary judgment on Plaintiff's unlawful seizure claim, contending that the defendant police officers had probable cause to arrest Plaintiff for fleeing and evading the police officers. They argue, first, that the officers were justified in approaching Plaintiff as a

suspect in the vandalism investigation, and second, that Officer Story had probable cause to arrest Plaintiff based on his flight. Plaintiff argues that he was under no obligation to open his door to talk to the officers in the first place, unless they informed him they had a warrant.

Plaintiff's constitutional right to be free of arrest without probable cause was violated. In New Mexico, a person does not commit the crime of fleeing and evading unless the person is "intentionally fleeing, attempting to evade or evading an officer of this state" with the "knowledge that the officer is attempting to apprehend or arrest him." N.M. Stat. Ann. § 30-22-1(B). Thus, in order to arrest a person for fleeing or evading a police officer, the police officers must reasonably believe that there existed a lawful basis to apprehend or arrest the person, unrelated to the flight. *State v. Gutierrez*, 162 P.3d 156, 165-66 (N.M. 2007). The officers need not have facts supporting a full showing of probable cause; reasonable suspicion and the intention to initiate an investigatory detention will suffice. *Id.* at 166.

As a standard which falls short of full probable cause, reasonable suspicion requires that a police officer merely provide "some minimal level of objective justification." *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004) (internal quotation marks omitted). "Reasonable suspicion arises when 'an officer of reasonable caution' has a 'particularized and objective basis for suspecting the person stopped of criminal activity . . . .'" *Id.* (quoting *Winder*, 557 F.3d at 1133-34). The officer's actions must be "judged against the totality of the circumstances," and the officer's "subjective motivations are irrelevant to [the] inquiry." *Id.* Thus, the law is clearly established that police officers must have reasonable suspicion to apprehend or arrest a person before the person can be arrested for fleeing or evading under New Mexico law.

Here, Defendants contend that reasonable suspicion existed to detain the occupants of Apartment No. 17 because Mr. Diaz identified one of the occupants as the person who had

5

vandalized his car. As explained above, however, it is not an undisputed fact that Mr. Diaz identified Plaintiff as the individual who vandalized the car. Viewed in the light most favorable to Plaintiff, the facts only show that the police were informed that: (1) a Hispanic male had been sighted in the vicinity of a vandalized car; and (2) that Hispanic male was, at the time the police arrived, located in Apartment No. 17. This case falls somewhere in between the two most similar Tenth Circuit cases discussing whether reasonable suspicion to detain a suspect can exist when the suspect is simply present at the scene of past criminal activity.

In *Oliver v. Woods*, 209 F.3d 1179 (10th Cir. 2000), the Tenth Circuit concluded – over the objection of a strongly-worded dissent – that reasonable suspicion was present when the suspect was found at the scene of past criminal activity outside of regular business hours. In that case, Mr. Oliver was dropping his car off for servicing at a repair shop before it opened, by pre-arrangement with the shop. *Id.* at 1182. That particular repair shop, however, had been experiencing trouble with illegal oil dumping. *Id.* The shop had placed a silent alarm across their driveway to alert police of unusual activity taking place, and Mr. Oliver triggered this alarm when he dropped off his car for repairs. *Id.* It was near dawn, but still dark. *Id.* The police officer who responded to the call was understandably upset when Mr. Oliver refused to answer any questions or present identification, and drove off from the shop. *Id.* at 1182-83. Calling for backup, the officer proceeded to perform a traffic stop of Mr. Oliver, and arrest him for failing to present identification. *Id.* at 1183-84. The Tenth Circuit found that reasonable suspicion existed to detain Mr. Oliver at the repair shop, *id.* at 1185-88, and thus that probable cause supported his arrest for interfering with a lawful detention (by leaving the scene), *id.* at 1188-89. In reaching this conclusion, the Tenth Circuit placed emphasis on the existence of the silent alarm, and the fact that the business was closed and it was near dawn. *Id.* at 1187.

On the other hand, the Tenth Circuit has unambiguously found that mere presence in an area of past criminal wrongdoing, in addition to suspected ongoing criminal activity, is not enough for reasonable suspicion. In *United States v. Davis*, three police officers were patrolling an area where gunshots had been reported in the past. 94 F.3d 1465, 1467 (10th Cir. 1996). One of the officers had investigated two shootings in the area, had been involved in eight arrests in the area relating to drugs and firearms, and knew that it had been the scene of gang disputes. *Id.* In addition, one building in the area was known to sell liquor without a license. *Id.* While on patrol by this building, the three officers observed an individual exit his car and walk towards the building with his hands in his pockets. *Id.* The individual made eye contact with one of the officers, then broke eye contact, and continued walking toward the establishment. The officer knew the individual had prior convictions and was associated with a gang, and the officer had received information that the individual had been selling narcotics. *Id.* The officers detained the man, and ultimately found a firearm in the back seat of his vehicle. *Id.* The Tenth Circuit concluded that none of these factors supported a reasonable, articulable suspicion of criminal activity. *Id.* at 1468-70. In short, the suspect's presence in an area where gunshots were reported, an area known to be the setting of previous firearm-related disputes, did not support reasonable suspicion for the police to conclude the suspect was involved in that type of criminal activity, even in conjunction with several other factors.

Although there appears to be little to distinguish between the two holdings, this Court finds that Plaintiff's mere presence at the scene of a past crime does not support a reasonable articulable suspicion that Plaintiff had committed the crime. *Oliver* demonstrates that proximity to a crime may be enough in combination with a type of sting operation – i.e., a silent alarm and police on the lookout for a particular type of crime before it occurs – may be approved. But *Davis*

teaches that although a suspicion of a particular type of crime may be articulable and precise, the suspicion still must be reasonably related to that particular subject's behavior. Plaintiff in this case was merely spotted next to a vandalized car. This information, even if communicated to the police, does not support reasonable suspicion because mere proximity to a crime does not link a person to that crime.

In short, to find that the officers had reasonable suspicion to apprehend or arrest Plaintiff, the Court must credit Officer Story's testimony that he obtained a witness statement to the effect that Plaintiff was the person who actually committed the vandalism. As it is, the undisputed facts do not show that the officers had reasonable suspicion to apprehend or arrest Plaintiff before he turned around to go back into the apartment. Plaintiff's constitutional right to be free of unlawful seizure was violated, and the law is clearly established that a person may not be detained for merely being present at the scene of a crime. The Court will not reach the balance of the parties' arguments concerning whether or not Plaintiff's behavior constituted "fleeing and evading" after the officers knocked on the apartment door.

      **B.**    **Excessive Force**

In order to recover on an excessive force claim, a plaintiff must show: "(1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.25 (10th Cir. 2007) (en banc). However, "in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it." *Id.* at 1127. In other words, the outcome of Plaintiff's excessive force claim depends on the outcome of his unlawful seizure claim. Because there is a

dispute of material fact with regard to whether Plaintiff's arrest was lawful, the Court cannot evaluate whether the force used in connection with that arrest was excessive. Defendants are not entitled to summary judgment on this claim.

### C. Municipal Liability

"To be liable, the municipality must have had an 'official municipal policy of some nature' that was the 'direct cause' or 'moving force' behind the constitutional violations." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215 (10th Cir. 2003) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). The complaint alleges that the City of Las Cruces is liable for the constitutional torts allegedly committed by its police officers pursuant to a "custom of illegally seizing the citizens of Las Cruces" and "using unreasonable and excessive force when dealing with the citizens of Las Cruces." Compl. ¶¶ 53-54 (Doc. 1). Defendants move for summary judgment on this claim on the basis that municipal liability cannot exist without an underlying constitutional violation, and the disputed facts show that no underlying violation occurred. While this legal reasoning is correct, *see Moore v. City of Wynnewood*, 57 F.3d 924, 935 (10th Cir. 1995), the Court has found that disputes of material fact exist with respect to whether a constitutional violation was committed by defendant police officers. Defendants' motion for summary judgment on the municipal liability claim must be denied.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 40) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**