IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN A. ROMERO,

       **Plaintiff,**

vs.                                                                          No. CIV 10-0591 RB/LAM

**JEREMY STORY, MANUEL FRIAS,
and VINCENT SHADD, individually,
and in their official capacities as Law
Enforcement Officers for the Las
Cruces Police Department, and
CITY OF LAS CRUCES, NEW MEXICO,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on remand from the Tenth Circuit Court of Appeals for evaluation of Plaintiff's excessive force claim separate and independent from his unlawful arrest claim in the context of qualified immunity. *See Romero v. Story*, 672 F.3d 880, 891 (10th Cir. 2012). Having considered the arguments of counsel, record, and relevant law, the Court finds that Defendants are not entitled to summary judgment on the excessive force claim in the context of qualified immunity.

**I.**     **Background**

Plaintiff Steven Romero alleges unlawful arrest and excessive force in violation of his federal constitutional rights against Las Cruces Police Officers Jeremy Story, Manuel Frias, and Vincent Shadd (Individual Defendants), as well as municipal liability against the City of Las Cruces, under 42 U.S.C. §1983, and state-law tort claims against the Individual Defendants.

Defendants moved for summary judgment on the §1983 claims, contending that the Individual Defendants were entitled to qualified immunity because they did not violate any clearly established constitutional rights, and, if the Individual Defendants are entitled to summary judgment, then the City of Las Cruces must be granted summary judgment as well.  Mr. Romero opposed the motion.  The Court denied the motion, holding that disputed issues of material fact existed regarding the unlawful arrest claim, and these disputed factual issues precluded evaluation of the excessive force claim.  Defendants filed an interlocutory appeal, pursuant to 28 U.S.C. §1291.  The Court of Appeals affirmed the denial of summary judgment as to the unlawful arrest claim, vacated the denial of summary judgment as to the excessive force claim, and remanded for evaluation of the excessive force claim separate and independent from the unlawful arrest claim.

**II.   Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Upon meeting this burden, the burden shifts to the non-movant to show specific facts supporting a genuine issue for trial as to all of the essential elements of his case.  *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) ("The party opposing the motion must present sufficient evidence in specific, factual form . . . .").  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

**III.	Statement of Facts**

The Court must view the facts in a light most favorable to Mr. Romero.  *See Turner*, 563 F.3d at 1142.  Thus, all reasonable inferences are drawn, and factual ambiguities are resolved, in Mr. Romero's favor.

On December 13, 2009, at approximately 2:00 p.m., Aaron Diaz was visiting a friend who lived at 235 West Madrid Avenue, Apartment 16, in Las Cruces, when he heard a loud noise and went outside to investigate.  (Affidavit of Aaron Diaz ¶¶ 2-3, Pl. Ex. A, Doc. 43-1).  Mr. Diaz saw an Hispanic male in the parking lot and noticed his vehicle had been vandalized. (Diaz Aff. ¶¶ 4-5).  Mr. Diaz saw the Hispanic male drive away in a teal van. (Diaz Aff. ¶ 6).  Mr. Diaz called the Las Cruces Police Department and Officer Luis Carrasco arrived at the apartment complex to take a report.  (Diaz Aff. ¶¶ 7-8).  Mr. Diaz informed Officer Carrasco that he saw an Hispanic male in the parking lot, but he did not tell Officer Carrasco that the Hispanic male vandalized his vehicle.  (Diaz Aff. ¶¶ 9-11).  Officer Carrasco took the report and left.  (Diaz Aff. ¶ 12).

About an hour later, Mr. Diaz called the Las Cruces Police Department to report that the Hispanic male had returned.  (Diaz Aff. ¶ 13).  At about 3:30 p.m., Defendant Officer Story arrived at the apartment complex.  (Deposition of Jeremy Story at 6-7, Def. Ex. A, Doc. 41-1 ).  According to Officer Story, when he arrived on the scene, Mr. Diaz stated that the person who had vandalized his vehicle had gone inside Apartment 17.  (Story Dep. at 6-7).  However, Mr. Diaz states in his affidavit he did not tell the police that he had actually witnessed the vandalism or that the Hispanic male had vandalized his vehicle.  (Diaz Aff. ¶ 10). Rather, Mr. Diaz indicates that in his first call to the police, he communicated the fact that an unknown Hispanic male was

present in the parking lot at the time Mr. Diaz noticed his vehicle had been vandalized. (Diaz Aff. ¶ 9). Mr. Diaz claims he then reported, in his second phone call, that the same unknown Hispanic male had entered Apartment 17. (Diaz Aff. ¶¶ 13, 15).

After Defendant Officers Shadd and Frias arrived on the scene, Officer Story knocked on the door of Apartment 17. (Deposition of Manuel Frias at 8-12, Def. Ex. B, Doc. 41-2). The officers did not have a search or arrest warrant. (Deposition of Vincent Shadd at 14-15, Def. Ex. E, Doc. 41-4). The officers observed no criminal activity in progress. (Shadd Dep. at 15; Frias Dep. at 15). The apartment complex was quiet. (Shadd Dep. at 16-17; Frias Dep. at 15). Officer Shadd stood to the side of the door of Apartment 17, and Officer Frias stood to the side of a van that was parked a few feet from the door. (Frias Dep. at 9-11). Mr. Romero opened the door and took a step or two outside of the apartment. (Diaz Aff. ¶¶ 21-22, Frias Dep. at 26). Mr. Romero was unarmed and he did not threaten the officers. (Story Dep. at 17). As Mr. Romero did not know why the officers were there, he turned around and stepped back inside the door. (Affidavit of Steven Romero ¶¶ 9-13, Pl. Ex. C, Doc. 43-3; Affidavit of Laurie Ann Wilson, ¶¶ 8-11, Pl. Ex. B, Doc. 43-2; Diaz Aff. at 29-30). Officer Story grabbed Mr. Romero on the shoulder and pulled him so he would not go inside the apartment. (Story Dep. at 22-23; Diaz Aff. ¶¶ 29-31; Frias Dep. at 28-29). Officer Frias, who had moved the few feet from his position by the van to where Officer Story had grabbed Mr. Romero, performed a leg sweep that caused Mr. Romero to fall to the ground and hit his face on the concrete. (Diaz Aff. ¶¶ 29-31; Frias Dep. at 28-29). Mr. Romero did not resist, but the officers pinned Mr. Romero face down on the sidewalk. (Diaz Aff. ¶¶ 31-33). Mr. Romero suffered a cut lip, broken front tooth, and bruised face. (Romero Aff. ¶ 14). When the officers picked him up, Mr. Romero was bleeding from his

face and mouth.  (Diaz Aff. ¶¶ 34-35). Officer Story arrested Mr. Romero for resisting, evading, or obstructing an officer.  (Story Dep. at 22-23).

**IV.     Discussion.**

**A.      Qualified immunity.**

 "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity represents "the norm for public officials, and serves to insulate from suit "all but the plainly incompetent or those who knowingly violate the law." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (internal quotations and citations omitted). "A plaintiff can overcome this presumption of immunity only by carrying the heavy burden of showing both that (1) the defendant-officer in question violated one of his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every reasonable official would have understood that what he [was] doing' violated the law." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (quoting *Ashcroft v. al–Kidd*, ____U.S. ____, 131 S.Ct. 2074, 2080, 2083 (2011)).

**B.      Unlawful arrest and excessive force**

"[W]here, as here, a case involves 'claims of both unlawful arrest and excessive force arising from a single encounter,' the district court must 'consider both the justification the officers had for the arrest *and* the degree of force they used to effect it.' " *Romero*, 672 F.3d at 890 (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (en banc)) (emphasis in

5

*Romero*). "The inquiries regarding unlawful arrest and excessive force are 'separate and independent, though the evidence may overlap.' " *Id.* (quoting *Cortez*, 478 F.3d at 1127). "In application, a plaintiff may argue law enforcement officers unlawfully arrested him. If the plaintiff successfully proves his case, 'he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest.' " *Id.* "If the plaintiff also alleges excessive force, the district court must conduct a separate and independent inquiry regardless of whether the plaintiff's unlawful arrest claim is successful." *Id.* "And if the district court concludes the arrest was unlawful, the court may not automatically find any force used in effecting the unlawful arrest to be excessive. Instead, the district court must then analyze the excessive force inquiry under the assumption the arrest was lawful." *Id.*

> The Tenth Circuit explained in *Cortez*:
>
> [T]he excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case. Thus, in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.

*Cortez*, 478 F.3d at 1126. If the plaintiff is successful in proving his excessive force claim, the plaintiff "is entitled to damages resulting from that excessive force." *Id*. at 1127. "The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither." *Id.* Accordingly, the Court will evaluate the excessive force claim separate from the unlawful arrest claim.

**C.      Defendants are not entitled to qualified immunity on the excessive force claim.**

"Excessive force claims are governed by the Fourth Amendment's 'objective

reasonableness' standard." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010). Under this standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The ultimate issue is whether the officers' use of force was objectively reasonable in light of the surrounding facts and circumstances as seen from the perspective of a reasonable officer at the scene. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (citing *Graham*, 490 U.S. at 388). In determining whether the use of force is reasonable in a particular situation, courts consider (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396.

Viewed in the light most favorable to Mr. Romero, the evidence of record establishes that Mr. Romero was not a suspect in a serious crime, he was unarmed, he did not threaten the officers, he did not attempt to flee and he did not actively resist arrest. Under these circumstances, a reasonable officer would not have performed a leg sweep that caused Mr. Romero to fall to the ground and hit his face on the concrete and would not have pinned Mr. Romero face down on the sidewalk. Viewed in the light most favorable to Mr. Romero, the evidence of record establishes that the actions of the Individual Defendants were not objectively reasonable and the force applied was excessive. Mr. Romero has satisfied the first element of his burden to overcome Defendants' assertion of qualified immunity.

Additionally, Mr. Romero's right to be free from excessive force in this type of situation was clearly established at the time of the incident. The Tenth Circuit has stated that "when an

7

officer's violation of the Fourth Amendment is particularly clear from *Graham* itself, we do not require a second decision with greater specificity to clearly establish the law." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).  Notably, "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Id*. at 1285.  Mr. Romero was not suspected of a serious crime, posed no immediate threat to the officers, and he did not actively resist arrest.  Based on the evidence of record, as discussed *supra*, Mr. Romero's right to be free from a forceful takedown onto concrete and having his bruised and bloodied face pinned down on the sidewalk was clearly established under *Graham*.   Accordingly, Defendants are not entitled to qualified immunity or summary judgment based on Mr. Romero's excessive force claim.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**